UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

=====================================

ADAM CARVALHO,                                    15-CV-72-RJA-MJR

                              Plaintiff,          REPORT AND
                                                  RECOMMENDATIONS
            v.                                    AND ORDER

ASSOCIATED BRANDS, INC.,

                              Defendant.

=====================================

## INTRODUCTION

        This case has been referred to the undersigned pursuant to Section 636(b)(1)(A)

and (B) of Title 28 of the United States Code, by the Honorable Richard J. Arcara, for the

hearing and reporting of dispositive motions for consideration by the District Court.  Plaintiff

Adam Carvalho ("plaintiff" or "Carvahlo"), a former employee of defendant Associated

Brands, Inc. ("Associated Brands" or "defendant"), who is proceeding *pro se*, claims that

defendant failed to promote him, discriminated against him, harassed him, and retaliated

against him on the basis of his anxiety disorder in violation of the Americans with

Disabilities Act of 1990 ("ADA").

        Before the Court is defendant's motion for summary judgment pursuant to Rule 56

of the Federal Rules of Civil Procedure.  (Dkt. No. 28).  Plaintiff filed a response to

defendant's motion on March 31, 2016 (Dkt. No. 38), and defendant filed a reply on April

20, 2016 (Dkt. No. 41).  Oral argument was heard on April 27, 2016, at which time the

Court considered the matter submitted.  For the following reasons, it is recommended that

defendant's motion for summary judgment be granted in its entirety.

## SUMMARY OF THE FACTS

Associated Brands is a wholly owned subsidiary of TreeHouse Foods, Inc., a publically traded company.[1]  (Dkt. No. 31, ¶2).  Defendant manufactures food products such as store-brand beverages, sweeteners, and mixes.  (*Id*.)  In May 2008, plaintiff began working at Associated Brands as a packer at the Medina, New York plant.  (*Id*. at ¶3).  His job duties included packaging, supply, and serving as a back-up operator of some machinery.  *Id*.  Plaintiff separated from employment with defendant on December 23, 2013 after sustaining a disabling, non-work related injury.[2]  (*Id*.).  At all relevant times, defendant had an anti-harassment and equal employment opportunity policy.  (*Id*. at ¶4, Exh. A).  In addition, the Medina plant had a policy prohibiting discrimination or harassment on the basis of disability.  (*Id*. at ¶5, Exh. B).

### *Defendant's Attendance Policy*

Associated Brands has an attendance policy, which is based on a point system.  (*Id*. at ¶6, Exh. C).  Any employee with an unexcused absence of 4 or more hours in a day receives points, and points are accrued over a rolling 12-month period.  *Id*.  Pursuant to the policy, an employee with 2 points receives a verbal warning, an employee with 4 points receives a written warning, an employee with 6 points receives a final warning, and receipt of 7 points results in the employee being reviewed for termination.  (*Id*.).  Defendant treats employee leave under the Family and Medical Leave Act ("FMLA") as excused absences

---

[1]  The facts described herein are taken from the pleadings, motion papers and exhibits filed in this lawsuit.

[2]  Plaintiff's separation from employment with defendant is not a basis for his discrimination and retaliation claim.

which do not result in any points under the attendance policy. (*Id*.). Pursuant to Associated Brands' attendance policy, an employee who has accrued 4 or more points is not eligible for promotion. (*Id*. at ¶6).

### *Plaintiff's FMLA Request and Attendance Record*

On February 24, 2012, Carvahlo advised defendant that he needed intermittent FMLA leave due to a serious health condition involving anxiety and panic attacks. (*Id*. at ¶8). Defendant requested some clarifying medical information from plaintiff, and in the meantime agreed to tentatively treat plaintiff's absences on April 12, May 2, and May 23, 2012 as FMLA excused absences. (*Id*. at ¶10). Plaintiff provided supplemental documentation on July 13, 2012 and was approved for FMLA leave. (*Id*. ¶¶10-11). Between May 12, 2012 and September 18, 2013, plaintiff was granted 30 days of intermittent FMLA leave, none of which resulted in points pursuant to defendant's attendance policy. (*Id*. at ¶11, Exh. G). Also during that time, plaintiff was permitted an additional five excused absences for family emergencies or bereavement, which also did not result in the accumulation of points under defendant's attendance policy. (*Id*.) In addition to this excused time off, plaintiff had seven unexcused absences between May 12, 2012 and September 18, 2013. (*Id*.). As a result of those unexcused absences, plaintiff received one verbal warning and three written warnings. (*Id*.).

### *Plaintiff's Application for Promotion*

On August 27, 2012, plaintiff applied for a promotion to a 2nd Shift Supply position. (Dkt. No 31, Exh. H). However, defendant disqualified him from consideration for promotion because, at that time, plaintiff had a total of five attendance points as a result

of unexcused absences.  (*Id.* at Exh. F).  Defendant advised plaintiff of the reason for the disqualification.  (*Id.*; Dkt. No. 31, ¶12).  Plaintiff claims that one of the five attendance points he had at that time was the result of absences on June 25, 2012 and June 26, 2012, which should have been treated as FMLA-qualifying absences.  However, it is undisputed that the remaining four points defendant had at that time were the result of unexcused absences.[3]  (Dkt. No. 29, Exh. F and Exh. M; Dkt. No. 31, Exh. G).

On July 24, 2013, plaintiff applied for a promotion to a 2nd Shift Bouillon Machine Operator position.  (Dkt. No. 31, Exh. I).  At that time, plaintiff had only one attendance point and therefore was not disqualified from promotion under the attendance policy.  (*Id.* at Exh. G).  Defendant states that plaintiff never appeared for an interview, while plaintiff contends that he was never contacted regarding an interview.  (Dkt. No. 31, ¶13; Dkt. No. 38, ¶30).  On August 12, 2013 defendant sent a letter to plaintiff stating that he was no longer being considered for the position because they were unable to get in touch with him for an initial interview.  (Dkt. No. 38, pg. 45).  On September 5, 2013, defendant sent plaintiff a letter indicating that the company had "chosen to pursue another candidate for the position."  (Dkt. No. 41-1, ¶8; Dkt. No. 38, pg. 50). Defendant states that, at that time, it had identified a preferred candidate among the four individuals, including plaintiff, who applied for the position.  (Dkt. No. 41-1, ¶8).  However, defendant later determined that the position was not needed and elected not to fill it.  (Dkt. No 31, ¶13).

---

[3]  During his deposition plaintiff testified that the attendance chart provided by defendants (Dkt. No. 29, Exh. C) was correct with the exception of the following: (1) a clerical error which did not effect his point total at the time of his application for the 2nd Shift Supply position; and (2) the fact that his absence on August 16, 2013 was not initially treated as an FMLA excused absence.  However, plaintiff testified that after he provided documentation, the absence on August 16, 2013 was treated as excused and did not result in attendance points.  Consistent with plaintiff's testimony, the attendance chart provided by defendant reflects an excused absence on August 16, 2013.  (Dkt. No. 31, Exh. G).

Between January 1, 2012 and December 13, 2013, Associated Brands had approximately 64 job postings that would have constituted promotions for plaintiff.  At least 15 of those 64 openings had applicants who were automatically excluded from consideration for promotion because of their attendance record.  (*Id*. at ¶14; Exh. J).  Associated Brands did however, from time to time, make exceptions to its general policy that an employee with four or more attendance points was not eligible for promotion.  (Dkt. No. 41-1, ¶3).  Three such exceptions were made between January 1, 2012 and December 31, 2013.  (*Id*.).  Specifically, Associated Brands promoted Laurie Taylor to a monitor position even though Taylor had four and a half attendance points.  (*Id*. at ¶4).  The exception was made because Taylor was the only individual on her shift to apply for the monitor position.  (*Id*.).  On October 9, 2012, Associated Brands offered Amir Cleveland a promotion to a 2nd Shift Back-Up Monitor Supply/Elevator position despite the fact that Cleveland had five attendance points.  (*Id*. at ¶5).  Similarly, an exception was made because Cleveland was the only applicant for the position.  (*Id*.).  Likewise, on November 19, 2013, Associated Brands offered Dustin Kingdollar the position of 2nd Shift Langguth Operator.  (*Id*. at ¶6).  Again, an exception was made because Kingdollar was the only individual on his shift to apply for the position.  (*Id*.).  In contrast, four other employees besides plaintiff applied to the 2nd Shift Supply position, and plaintiff was the only applicant with four or more attendance points.  (Dkt. No 31, Exh. J).

### *Plaintiff's Internal Complaints of Discrimination*

On November 6, 2013, plaintiff called the TreeHouse Ethics and Compliance Employee Hotline ("ethics hotline") to complain that he had been a victim of discrimination and harassment since July 2012.  (Dkt. No 31, ¶16).  Plaintiff claimed that Juanita

Richards, Second Shift Supervisor, Mary Lou Porter, Human Resources Manager, and Sandy Rodgers, Second Shift Supervisor, had been harassing him and discriminating against him on the basis of his disability.  (Dkt. No. 31, Exh. L).  Specifically, plaintiff claimed that after he requested FMLA leave, Porter called him on his cell phone and informed him that he could not take FMLA leave whenever he wanted and then "took back" three FMLA days, which resulted in attendance points that later disqualified him from the 2nd Shift Supply position.  (*Id*. at ¶16).  With respect to the Bouillon Machine Operator position he applied for in 2013, plaintiff stated that both Richards and Rodgers purposefully failed to notify him that human resources requested that he appear for an interview.  (*Id*.).  Plaintiff stated that after he was disqualified from consideration for failing to report to the interview, Porter told him that he was unreliable and would be an undue burden on another department.  (*Id*.).  Plaintiff alleged that around this same time, Richards told him that he was disqualified from the Bouillon Machine Operator position because of his attendance record and FMLA requests, and that his disability was interfering with his advancement with the company.  (*Id*. at Exhs. L and M).  Plaintiff complained that Sandy Rodgers embarrassed him on October 29, 2013 by raising her voice and criticizing his job performance in front of his co-workers.  (*Id*.).  Plaintiff also complained that his absence on August 16, 2013 had been improperly treated as unexcused when it should have qualified as excused under the FMLA.  (*Id*. at ¶16).

Plaintiff called the ethics hotline again on November 8, 2013.  He complained that he had agreed to work a specific assignment on a Saturday, and despite that assignment being cancelled, he was forced to accept another work assignment that he had not agreed to.  (*Id*.).  Plaintiff stated that others who agreed to come in that Saturday were not required

to work after the assignment was canceled.  (*Id*.).  In addition to the complaints he made to the ethics hotline, plaintiff states, in his response to defendant's motion for summary judgment, that on September 11, 2013, a supervisor said to him "look who decided to show up" and that he had difficulties logging into the computer system due to problems with his password.  (Dkt. No. 38, pg. 55).

Sue Barlow, Senior Director of Human Resources for Associated Brands, conducted an investigation of plaintiff's complaints.  (Dkt. No. 31, ¶17).  She interviewed plaintiff, Porter, Richards and Rodgers on November 11, 2013.  (*Id*.).  Barlow determined that the three days plaintiff claims were "taken back" (which included April 12, May 2, and May 23, 2012) were treated as FMLA-qualifying absences and did not result in points under the attendance policy.  (*Id*. at Exh. M).  Porter told Barlow that she had called plaintiff to inform him that under the FMLA, the frequency of time-off needed to be certified by a doctor, and that he had failed to submit paperwork for his absences on June 25, 2012 and June 26, 2012.  (*Id*. at Exh. M).  Barlow determined that in spite of the days plaintiff contends should have qualified as excused under the FMLA, specifically June 25 and June 26, 2012, plaintiff was nevertheless ineligible for promotion to the 2nd Shift Supply position because of his attendance record.  (*Id*.).  Specifically, plaintiff had four attendance points wholly unrelated to any days where he requested FMLA leave.  (*Id*.).  With respect to the 2nd Shift Bouillon Machine Operator position, Barlow concluded that due to a miscommunication on the part of Richards and Rodgers, plaintiff was not informed of the interview.  (*Id*.).  In addition, Barlow determined that plaintiff's absence on August 16, 2013 would be treated as excused and therefore would not result in attendance points.  (*Id*.).

Also during Barlow's investigation, both Richards and Porter denied making any statement to plaintiff to the effect that his attendance record was preventing him from advancing at the company, that he was unreliable or that he would be a burden on another department.  (*Id*.).  Rodgers admitted that she reprimanded plaintiff in forceful tone on October 29, 2013 regarding his work performance.  (*Id*. at ¶19).  Barlow concluded that while Rodgers needed to be more careful in her communication style, as she had previously reprimanded other employees in a similarly harsh manner, there was no evidence that Rodgers treated plaintiff differently on the basis of a disability or any other protected characteristic.  (*Id*.).  With respect to the Saturday work assignment, Barlow determined that plaintiff volunteered to work a certain line on a Saturday but was switched to a different line without his approval.  (*Id*.; Dkt. No 31, Exh. M).  However, Barlow concluded that the assignment was the result of a failure in communication rather than discriminatory conduct on the part of plaintiff's supervisors.  (*Id*.).

Barlow ultimately concluded that no discrimination or harassment on the basis of any protected characteristic had occurred.  (Dkt. No. 31, Exh. M).  However, she made certain recommendations as a result of her investigation.  (*Id*.).  These included improved communication strategies when an employee is denied participation in a job bid, improved communication style by Rodgers when counseling an employee, and refresher training on certain company policies, including the discrimination and harassment policies.  (*Id*.).

Plaintiff alleges that after his complaints to the ethics hotline, he was treated worse by supervisors Richards and Rodgers.  (Dkt. No. 38, pg. 58).  Specifically, plaintiff complains that his supervisors forced him to work on a "bad line" with an uncooperative co-worker, that he was forced to work on a machine he was not properly trained on, and that

he subject to "dirty looks" and "bad vibes" from his supervisors.  (*Id*.).  Plaintiff also claims

that as a result of his complaints, defendant failed to provide information to his disability

carrier.  (*Id*. at pg. 34-35).

On June 26, 2014, defendant was copied on a letter, from plaintiff's disability carrier

to plaintiff, indicating that plaintiff's short-term disability coverage lapsed on June 13, 2013

as a result of plaintiff's failure to provide requested medical information.  (Dkt. No. 41, ¶9,

Exh. E).  Defendant also received a copy of a letter dated July 3, 2014, from plaintiff's

disability carrier to plaintiff, advising plaintiff that his short-term disability coverage had

been reinstated because the carrier had received the necessary information.  (*Id*. at Exh.

F).  On July 9, 2014 and July 18, 2014, defendant provided information to plaintiff's

disability carrier regarding plaintiff's disability benefits.  (*Id*. at ¶¶11, 12, Exhs. G and H).

On July 25, 2014, defendant received a letter from plaintiff's disability carrier advising that

plaintiff's claim for long-term disability coverage had been retroactively approved beginning

June 21, 2014.  (*Id*. at ¶13; Exh. I).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity

Commission on December 3, 2013.  (Dkt. 29, Exh. A).  On October 27, 2014, plaintiff

received a right to sue from the EEOC.  (*Id*. at Exh. B).  The EEOC was unable to conclude

that there had been a violation of the ADA and dismissed plaintiff's complaint.  (*Id*.).

Plaintiff commenced the instant action on January 23, 2014.  (Dkt. No. 1).

## DISCUSSION

### *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is to be granted

where "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." *See* Fed.R.Civ.P. 56. A genuine issue of material fact exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). "[V]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier [of fact] could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Bay v. Times Mirror Magazine, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991). When a movant has met this burden, the burden shifts to the non-movant to bring forth evidence establishing the existence of an issue of material fact. *Linares v. McLaughlin*, 423 Fed. Appx. 84, 86 (2d Cir. 2011). In evaluating a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, and it is the burden of the moving party to demonstrate the absence of any material facts genuinely in dispute. *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir. 1988).

Where a plaintiff is proceeding *pro se*, the court must "construe the complaint liberally and interpret it to raise the strongest arguments that [it] suggest[s]." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). However, even a *pro se* litigant cannot defeat a motion for summary judgment by relying upon conclusory statements or mere allegations unsupported by facts. *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).

Here, plaintiff claims that defendant violated the ADA by failing to promote him to the positions of 2nd Shift Supply and 2nd Shift Bouillon Machine Operator, refusing to treat certain absences as excused absences under the FMLA, denying him an interview for the 2nd Shift Bouillon Machine Operator position, harassing him because of his disability, and retaliating against him after he complained of discrimination and harassment. As explained

below, the undisputed facts viewed in a light most favorable to plaintiff demonstrate that defendant is entitled to judgment as a matter of law.

### Failure to Promote

Plaintiff alleges that he was discriminated against on the basis of his disability when he was denied a promotion to the 2nd Shift Supply position on September 24, 2012.  This claim fails because it is time barred.   The ADA requires plaintiffs to file a charge of discrimination with the EEOC (or a similar state agency) within 300 days of the alleged discriminatory employment action.   *See* 29 U.S.C. §626(d)(1)(B).   Claims for acts that occurred more than 300 days before the filing of a charge are time barred in federal court. *Id*.   Furthermore, each incident of discrimination alleged by a plaintiff constitutes a separate, actionable, unlawful practice, and a plaintiff can only file a charge to cover discrete acts that occurred within the appropriate time period.   *Id*.   *See also Staff v. Pall Corp.*, 76 Fed. Appx. 366, 368 (2d Cir. 2003) ("A claim based on a discrete act of alleged discrimination...must be filed with the EEOC within 300 days after the act occurred"); *Smith v. St. Luke's Roosevelt Hospital*, 2009 U.S. Dist. LEXIS 69995 (SDNY 2009) (to the extent that plaintiff's complaint alleges that he applied for the inventory specialist position in 2002, "long before the 300 day look-back period from his [Division of Human Rights] complaint, [plaintiff's] failure to promote claim should be dismissed").

An exception to the statue of limitations in discrimination claims exists if a plaintiff has experienced a continuous pattern and practice of discrimination.   *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001).   Then, the "commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Id*.   In order to demonstrate that the continuing violation doctrine applies, a plaintiff must

show both the existence of an ongoing policy of discrimination and that at least one act of discrimination in furtherance of the policy occurred within the 300-day limitations period. *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)  However, "discrete acts that fall within the statutory time period do not make timely acts that fall outside of the time period."  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (the continuing violations doctrine does not permit a plaintiff to bring untimely claims for freestanding discrete acts of discrimination or retaliatory actions, such as failure to promote or termination, even if they are "related to acts alleged in timely filed charges").  Examples of "discrete discriminatory acts" which are not subject to the continuing violations theory include "termination, failure to promote, denial of transfer, or refusal to hire."  *Id*.  *See AMTRAK v. Morgan*, 536 U.S. 101, 114 (2002) (internal citations omitted) ("actions that are discrete and easy to identify such as termination, failure to promote, denial of transfer, or refusal to hire" cannot form the basis of a continuing violation); *Valtchev v. City of New York*, 400 Fed. Appx. 586 (2d Cir. 2010) (failure to promote claims and discrete instances of retaliatory action, such as negative evaluations, do not trigger the continuing violations exception).

Here, plaintiff received a letter on September 24, 2012 stating that he was deemed ineligible for the 2nd Shift Supply position as a result of his attendance record.  (Dkt. No. 38, pg. 40).  Plaintiff filed his EEOC charge 435 days later, on December 3, 2013.  (Dkt. No. 29, ¶2, Exh. A).  Thus, because more than 300 days elapsed between the denial of the promotion and plaintiff's filing of an EEOC charge, his failure to promote claim with respect to this position is untimely.  Moreover, because plaintiff's failure to promote claim is a

discrete act of discrimination which falls outside of the 300 day look-back period for statute of limitations purposes, it is not subject to the continuing violations exception.

Even if plaintiff's failure to promote claim with respect to the 2nd Shift Supply position was not untimely, which it is, this claim still must be dismissed because plaintiff was not qualified and defendant had a legitimate, non-discriminatory reason for not promoting plaintiff.  In order to succeed on a theory of disability discrimination for failure to promote, plaintiff must show: (1) that he was disabled under the ADA; (2) that he applied for a position for which he was qualified; (3) that he was not promoted; and (4) that the failure to promote was under circumstances giving rise to an inference of discrimination.  *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96-97 (2d Cir. 2009).  Once a *prima facie* case has been established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason why the employee was not promoted.  *Mauro v. Southern New England Telecommunications, Inc.*, 208 F.3d 384, 387-388 (2d Cir. 2000).  If a legitimate non-discriminatory reason is established, the burden returns to the employee to demonstrate that the proffered reason was pretext for disability discrimination.  *Id*.

Here, the parties agreed that plaintiff had a disability under the ADA, that he applied to the 2nd Shift Supply position, and that he was not promoted.  However, plaintiff had five attendance points at the time he applied for this position and defendant's attendance policy stated that employees were not eligible for promotion if they had four or more attendance points.  While there is a factual dispute as to whether one of those points was a result of absences that should have been covered by the FMLA (June 25 and 26, 2012), it is undisputed that the four remaining points were a result of unexcused absences that had

nothing to do with plaintiff's health condition and which plaintiff does not contend should have been excused under the FMLA. (Dkt. No. 29, Exhs. F and M). Thus, plaintiff was not qualified for the promotion because of his attendance record. In addition, plaintiff's non-FMLA related attendance problems were a legitimate, non-discriminatory reason as to why he was denied the promotion. *See Henny v. New York State*, 842 F. Supp. 2d 530, 554 (SDNY 2012) ("plaintiff's lateness and absences certainly suffice to establish a legitimate, non-discriminatory reason for her treatment").

In an effort to show pretext, plaintiff points to instances where defendant made exceptions to the attendance policy and promoted individuals with four or more attendance points. Defendant has submitted documentation indicating that during the relevant time period, it made three exceptions to its policy that employees with four or more attendance points were not eligible for promotion. (Dkt. No. 41, §§4-6). In all three of those instances, the employee who applied for the position was the only applicant. (*Id.*). In contrast, it is undisputed that there were at least four other applicants, besides plaintiff, for the 2nd Shift Supply position who did not have four points pursuant to defendant's attendance policy. (Dkt. No. 31, Exh. J). In addition, defendant has provided documentary evidence that during the relevant time period, it disqualified at least 15 applicants from a total of 64 openings because of their attendance record. Thus, plaintiff has not demonstrated that he was treated differently than similarly situated employees who were not disabled, namely those who had four or more attendance points and were applying for positions with multiple applicants. *See Rosinski v. Am. Axle & Mfg.*, 663 F. Supp. 2d 197 (WDNY 2009) (plaintiff must provide an objectively identifiable basis of comparability between himself and other

-14-

employees); *Thompson v. Solis*, 379 Fed. Appx. 71 (2d Cir. 2010) (evidence insufficient to find pretext where plaintiff not similarly situated in all material respects to her comparator employees).

Plaintiff further alleges that defendant discriminated against him on the basis of his disability when he was not selected for the 2nd Shift Bouillon Machine Operator position in August of 2013.   This claim fails because defendant had legitimate non-discriminatory reasons for not promoting plaintiff to this position.   First, plaintiff failed to appear, after numerous requests, for the initial interview. (Dkt. No. 38, pgs, 46-49).   *See Lloyd v. Holder*, 2013 U.S. Dist. LEXIS 178456 (SDNY 2013) (employer offered several legitimate, non-discriminatory reasons for not promoting plaintiff, including the fact that she "failed to even show up to her originally scheduled interview").   The record demonstrates that in July of 2013, when defendant was conducting initial interviews for this position, Rodgers and Richards were contacted via email by a human resources assistant and asked to send plaintiff for an interview. (Dkt. No. 38, pgs. 45-49).   During her investigation of plaintiff's complaints, Barlow determined that, due to a miscommunication, plaintiff was never informed of the interview. (Dkt. No. 31, Exh. M). Plaintiff alleges that this reason was a pretext and that Richards and Rodgers, his supervisors, purposefully failed to inform him of the interview. (Dkt. No. 38, pg. 7).   In addition, plaintiff alleges that after he was disqualified from consideration, Richards told him that his attendance record, including his FMLA requests, were preventing his advancement with the company.   Considering the disputed facts in the light most favorable to plaintiff, and even assuming that Richards made this comment and that Rodgers and Richards purposefully failed to inform plaintiff

of the interview, there is still no showing of pretext.  The record demonstrates that Rodgers and Richards, both Second Shift Supervisors, were not involved in the interview process nor were they involved in promotion determinations at defendant's Medina plant.  (Dkt. No. 31, ¶16, note 3).  Instead, their duties and responsibilities were limited to the day-to-day supervision of employees.  *Id*.  Because Rodgers and Richards were not involved in the decision as to plaintiff's application and promotion, any alleged comments or actions on their part are not a sufficient showing of pretext.  *See Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 115 *2d Cir. 2007) ("remarks by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that decision-makers are motivated by discriminatory animus"); *Fontecchio v. ABC Corp.*, 2015 U.S. Dist. LEXIS 7892 (SDNY 2015) (no evidence of pretext presented in support of plaintiff's claim of discriminatory termination where plaintiff did not demonstrate that the individuals who made the discriminatory comments were involved in the termination).

Plaintiff further alleges that after he received the letter stating that he was ineligible for the position because of his failure to appear for the interview, he went to speak with Porter, Human Resources Manager.  Plaintiff claims that Porter told him that he was "unreliable because of his call-ins" and would be "considered an undue hardship".  (Dkt. No. 38, pg. 54).  However, not only does Porter deny making these statements to plaintiff, but the credible evidence presented directly contradicts plaintiff's allegations.  Indeed, the record here demonstrates that those employees of defendant's who were participating in the promotion and hiring process, including Porter, wanted to interview plaintiff for the Bouillon Machine Operator position and contacted his supervisors at least four times

regarding the scheduling of an interview.  (Dkt. No. 38, pgs. 46-49).  It was only after plaintiff failed to present himself over a period of time that he was disqualified from consideration.  It is illogical that Porter and other members of the human resources department would attempt to contact plaintiff numerous times for an interview if they truly intended to deny him the position on the basis of his disability.  Thus, plaintiff's unsupported and self-serving allegations about Porter's comments are insufficient to demonstrate pretext.  *See VanZant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (in order to defeat summary judgment on the basis of pretext, plaintiff may not rely solely on upon her own self-serving and conclusory statements that the proffered reasons were false); *St. Mary's Honor v. Hicks*, 509 U.S. 502, 507 (1993) ("a reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason").

In addition, the undisputed facts demonstrate that after accepting applicants and interviewing a number of candidates, defendant ultimately decided that the Bouillon Machine Operator position was not needed and elected not to fill it.  (Dkt. No. 32, ¶¶32-33; Dkt. No. 31, ¶13; Dkt. No. 29, ¶14, Exh. L).  Thus, defendant's decision not to fill the position is a separate, legitimate, non-discriminatory reason as to why plaintiff was not promoted.  *See Meucci v. City of Hartford*, 2013 U.S. Dist. LEXIS 33643 (D. Conn. 2013) (summary judgment granted where employer had legitimate non-discriminatory reasons for failing to promote plaintiff, including the existence of a hiring freeze and the fact that the position applied for no longer existed); *Sareen v. The Port Authority of New Jersey*, 2013 U.S. Dist. LEXIS 176093 (SDNY 2013) (where the position that an employee previously

held was eliminated, the employer had a legitimate non-discriminatory reason for failing to reinstate plaintiff). In an attempt to show that this proffered reason was a pretext, plaintiff points to a letter he received on September 5, 2013 indicating that defendant had chosen to pursue another candidate for the Bouillon Machine Operator position. Defendant states that, at the time the letter was sent, it was pursing other candidates and had not yet decided not to fulfill the position. There is no evidence in the record that this letter was either inaccurate or a pretextual excuse to exclude plaintiff from consideration because of his disability. *See Williams-Velasquez v. Guardian Life Ins. Co.*, 2003 U.S. Dist. LEXIS 14990 (SDNY 2003) ("discrimination claim regarding Supervisor position cannot survive summary judgment where [plaintiff] presented no evidence that would allow a rational fact-finder to disbelieve [d]efendants' explanation for the elimination of the Supervisor position, and thus their decision not to promote plaintiff to Supervisor"). Indeed, plaintiff testified during his deposition that the Bouillon Machine Operator position was never filled. (Dkt. No. 29, Exh. L). In addition, the record clearly establishes that other non-disabled employees applied for and were considered for this position before defendant decided not to fill it with any candidate. (Dkt. No 31, Exh. J, pg. 7). Thus, there is no evidence that defendant's decision not to fill the position was made to avoid promoting plaintiff on account of his disability.

### *Disability Discrimination*

Plaintiff further claims that he was discriminated against on the basis of his disability when defendant refused to treat certain absences as FMLA-qualifying and when he was denied an interview for the Bouillon Machine Operator position. In order to prove

discrimination under the ADA, a plaintiff must demonstrate: (1) that the employer is subject to the ADA; (2) that plaintiff is disabled within the meaning of the ADA or perceived to be so by the employer; (3) that plaintiff was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) that plaintiff suffered an adverse employment action; and (5) that the adverse action was imposed because of plaintiff's disability. *See Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). Under the last element, a plaintiff must show that the adverse employment action "took place under circumstances giving rise to an inference of discrimination." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

Here, plaintiff's discrimination claims fails because neither the refusal to qualify certain absences under the FMLA nor the denial of an interview for the Bouillon Machine Operator position constitute adverse employment actions. In order to qualify as an adverse employment action, an employer's action toward plaintiff must be "materially adverse" with respect to "the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). Specifically, the action must be "more than a mere inconvenience or alteration of job responsibilities." *Id.* Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished job responsibilities." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (internal citations omitted).

Here, plaintiff claims that he was improperly assigned attendance points for FMLA-qualifying absences on June 25 and June 26, 2012 and August 16, 2013. He also claims

that three days of FMLA-qualifying absences were "taken back" from him, including April 12, 2012, May 2, 2012 and May 23, 2012.  However, the record conclusively establishes that plaintiff was granted FMLA-leave on April 12, 2012, May 2, 2012, and May 23, 2012, and therefore plaintiff incurred no points under the attendance policy for his absences on these days.  (Dkt. No. 31, Exh. G, pg, 2).  The record also clearly demonstrates that although plaintiff's August 16, 2013 absence was initially treated as unexcused, it was later converted to an FMLA-qualifying absence which did not result in the accrual of any attendance points.  (Dkt. No. 31, Exh. G, pg, 2).  Further, the points plaintiff accrued as a result of his absences on June 25 and 26, 2012 did not result in his disqualification from the 2nd Shift Supply position, since, notwithstanding those absences, plaintiff had four points under the attendance system.  Thus, there is no evidence that defendant's refusal to excuse plaintiff's absences on June 25, 2012 and June 26, 2012 resulted in a materially adverse change in plaintiff's terms and conditions of employment, such as the denial of a promotion opportunity.  In addition, any claim by plaintiff that the refusal to treat June 25, 2012 and June 26, 2012 as FMLA-qualifying absences was an adverse employment action because it resulted in a verbal or written warning under the attendance policy is without merit, since oral and written warnings do not amount to materially adverse conduct.  *See Chang v. Horizons*, 254 Fed. Appx. 838 (2d Cir. 2007).  *See also Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) (application of an employer's disciplinary policy to an employee, without more, does not constitute an adverse employment action); *Shaughessy v. Xerox Corp.*, 2015 US Dist. LEXIS 39537 (WDNY 2015) (it is well established that "criticisms, and even written warnings, do not constitute adverse employment actions when there is no diminution in pay, job status, or benefits").

Likewise, the fact that plaintiff was denied an interview for the Bouillon Machine Operator position does not, in and of itself, constitute an adverse employment action for purposes of plaintiff's disability discrimination claim.  It is undisputed that defendant elected not to the fill the position.  Therefore, plaintiff suffered no material change in the terms and conditions of his employment nor was he denied an opportunity for advancement or promotion as a result of the denial of the interview.  *See Trachtenberg v. Dept. of City of N.Y.*, 937 F. Supp. 2d 460, 468 (SDNY 2013) (the denial of professional training opportunities may constitute an adverse employment action "only where an employee can show material harm from the denial, such as failure to promote or loss of career advancement opportunities"); *Aiello v. Stamford Hospital*, 2011 U.S. Dist. LEXIS 87121 (D. Conn. 2011) (summary judgment appropriate were plaintiff failed to show that "denial of overtime resulted in material harm to his professional growth or career advancement" and this failed to establish an adverse employment action).  Moreover, even if the denial of the interview was an adverse employment action, which it is not, plaintiff's claim still fails.  As discussed in detail above with respect to plaintiff's failure to promote claim, there is no evidence in the record that the failure to interview plaintiff for the Bouillon Machine Operator position occurred under circumstances giving rise to an inference of discrimination.

<u>*Hostile Work Environment*</u>

In order to establish a claim for hostile work environment discrimination, a "plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Howley v. Town of Stratford*,

217 F.3d 141, 153 (2d Cir. 2000).[4]   "Isolated remarks or occasional episodes of harassment must occur in concert with a regularity that can reasonably be termed pervasive." *Galimore v. City University of New Bronx Community College*, 641 F. Supp.2d 269, 291 (SDNY 2009).  In determining whether a hostile work environment exists, courts are instructed to consider "the frequency and severity of the conduct" and "whether the conduct was physically threatening, humiliating, or merely an offensive utterance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993).   Whether a workplace is hostile must be determined by the totality of the circumstances.  *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).  In addition, a plaintiff must show that the hostile conduct occurred because of a protected characteristic.  *Tolbert v. Smith*, 790 F.3d 427 (2d Cir. 2015).  Here, plaintiff's hostile work environment claim fails because he can demonstrate neither discriminatory animus nor that he was subjected to an abusive working environment which altered the terms and conditions of his employment.

Plaintiff alleges the following incidents as evidence of a hostile work environment over an approximately two year period: (1) an incident where he was unable to use his password on a work computer and had to borrow a co-worker's computer; (2) a reprimand by Rodgers when he was late in returning from a break; (3) a reprimand from Rodgers on October 29, 2013 regarding his work performance in the presence of other employees; (4) a requirement that he operate two lines simultaneously on November 7, 2013; (5) an incident where he was forced to work a Saturday assignment which he had not agreed to;

---

[4]  "Although the Second Circuit has not expressly held that the ADA authorizes claims for hostile work environment, district courts have found that the ADA encompasses hostile work environment claims." *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (SDNY 2008).

(6) a "dirty look" from Rodgers on November 11, 2013; and (7) an assignment on December 16, 2013 that he operate a machine on which he had not been fully trained. These incidents, consisting of minor inconveniences, unfavorable job assignments, and slight reprimands are neither severe nor pervasive, did not alter the conditions of plaintiff's employment and are insufficient to establish a hostile work environment.  Moreover, the record is bereft of any evidence suggesting that these incidents were based upon or connected to plaintiff's disability.  *See Alfano v. Costello,* 294 F.3d 365 (2d Cir. 2001) ("It is....important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination...otherwise federal courts will become a court of personnel appeals")*; Barounis v. N.Y.C. Police Dep't*, 2012 U.S. Dist. LEXIS 176477 (SDNY 2012) (dismissing hostile work environment claim where there was no evidence that the "creation of an unpleasant work environment" was "the result of discriminatory animus based on plaintiff's race").   Indeed, plaintiff testified at his deposition that Rodgers "always belittled people...like took people down, yelled at people...[n]ot just me."  (Dkt. No. 28, Exh. BB). Thus, plaintiff alleges nothing more than dissatisfaction with certain assignment and harsh or unfair treatment by a supervisor which had nothing to do with his disability, none of which can serve as a basis for a hostile work environment claim.  *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70 (2d Cir. 2010) (the alleged hostility in support of a hostile work environment claim must be generated on the basis of a protected character because federal law "does not guarantee a utopian workplace, or even a pleasant one"); *Mills v. Conn. State Univ.*, 2011 U.S. Dist. LEXIS 88348 (D. Conn. 2011) ("The fact that a supervisor is rude, disrespectful, yells at or criticizes an employee will not support a hostile work environment claim in the absence of any connection to a protected characteristic.").

In addition, plaintiff alleges four comments made by supervisors over a one year period which may seem to implicate his disability.  Plaintiff claims that in July 2012 Porter called him on his cell phone and informed him that he could not use FMLA time "whenever he felt like it."  He alleges that in August of 2013 Richards told him that his attendance record and FMLA requests, and by extension his disability, were preventing him from advancing at the company.  Plaintiff contends that in August of 2013, Porter told him he was unreliable and would be a burden on another department.  Plaintiff further alleges that another supervisor stated to him on one occasion, "look who decided to show up today." Even if the Court were to consider these statements harassment on the basis of disability, four sporadic discriminatory remarks or comments over a one year period are simply insufficient to establish a hostile work environment. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) ("isolated remarks or occasional episodes of harassment will not merit relief...in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed to be pervasive"); *Pasic v. Eatzi's Texas Holding*, 2003 U.S. Dist. LEXIS 305 (SDNY 2002) (summary judgment on hostile work environment claim granted where five comments over a 13 month period of employment were deemed insufficient to establish that plaintiff had suffered persistent harassment).

## *Retaliation*

In order to establish a claim of retaliation under the ADA, an employee must demonstrate that: (1) they were engaged in protected activity; (2) that the employer was aware that they were engaged in protected activity; (3) that they suffered an adverse employment action; and (4) that a causal connection existed between the adverse employment action and the protected activity.  *Sarno v. Douglas Elliman-Gibbons & Ives,*

*Inc.*, 183 F.3d 155, 159 (2d Cir. 1999).   If a plaintiff successfully establishes these elements, the burden shifts to the employer to demonstrate a "legitimate, non-retaliatory reason for the challenged employment decision."  *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001).  Once the employer has met this burden, the employee must show that the legitimate reason was merely a pretext for retaliation.  *Id*.  For purposes of a retaliation claim, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe R.R. Co. V. White*, 548 U.S. 53, 68 (2006) ("petty slights, minor annoyances, and simple lack of good manners will not normally constitute adverse employment actions for purposes of a retaliation claim").

Plaintiff engaged in protected activity on November 6 and 8, 2013 when he called the ethics hotline and complained that he was being discriminated against on the basis of his disability.[5]  However, the retaliation claim fails because none of the conduct alleged by plaintiff constitutes an adverse employment action and there is no causal connection between the majority of the conduct and the protected activity.  Specifically, plaintiff alleges that the following incidents occurred after his complaint of discrimination: (1) he was subjected to "dirty looks" and "bad vibes" from his supervisors; (2) he was forced to accept a Saturday work assignment he did not agree to; (3) he was required to service two lines simultaneously on November 7, 2013; (4) he was asked to operate a machine that he was not fully trained on; and (5) he was assigned to work with an uncooperative co-worker.

---

[5]  Plaintiff's EEOC complaint also alleges that he complained of discrimination on August 14, 2013.  However, the only evidence of protected activity in the record is plaintiff's complaint to the ethics hotline in November of 2013.

None of these incidents, considered together or alone, would dissuade a reasonable worker from making a charge of discrimination.

Dirty looks, bad vibes and uncooperative behavior from co-workers and supervisors are exactly the types of petty slights that the Supreme Court has excluded from actionable retaliatory conduct. *Burlington*, 548 U.S. 68 ("[P]ersonality conflicts at work that generate antipathy and snubbing by supervisors and coworkers are not actionable."). Furthermore, the work incidents complained of by plaintiff, including the Saturday work assignment, the requirement that he service two lines simultaneously on one occasion, and the request he work on a machine he was not fully trained on, are minor inconveniences that would not dissuade a reasonable employee from making a claim of discrimination. It is undisputed that plaintiff volunteered for the Saturday assignment but was later dissatisfied when that assignment was cancelled and he was placed on a different line instead of sent home. With respect to the requirement that he operate two lines simultaneously, plaintiff testified that although this assignment was stressful, he was able to handle it. (Dkt. No. 30, Exh. W). After plaintiff complained that he was assigned to operate a machine he was not properly trained on, the human resources department agreed that plaintiff should receive the appropriate training. (Dkt. No. 30, Exh. Z). Finally, these three incidents were isolated and discrete occurrences that resulted in no significant or permanent change to plaintiff's job duties or responsibilities.

Moreover, plaintiff has failed to demonstrate a causal connection between the majority of the complained of work assignments and his protected activity. Plaintiff called the ethics hotline on November 6 and 8, 2013. Plaintiff's supervisors were not informed of his complaints until November 11, 2013. (Dkt. No. 31, ¶17). Plaintiff was required to

service two lines simultaneously on November 7, 2013 and the Saturday work assignment occurred on November 8, 2013.  Thus, the record is devoid of any evidence that plaintiff's supervisors knew of his complaints when they assigned him to two lines or switched his Saturday work assignment.  *See Mack v. Otis Elevator Co.,* 326 F.3d 116, 129 (2d Cir. 2003) (granting summary judgment on retaliation claim because decisionmaker had no knowledge of plaintiff's protected activity); *Sundaram v. Brookhaven Nat'l Labs*., 424 F. Supp. 2d 545, 584 (EDNY 2006) ("In short, the plaintiff has failed to establish a *prima facie* case of retaliation because there is no evidence that any of the decisionmakers [were] aware of plaintiff's protected activity and thus no evidence of a causal connection between the protected activity and the defendant's hiring decision.").

In his response to plaintiff's motion for summary judgment, plaintiff claims, for the very first time, that defendant further retaliated against him by failing to provide requested documentation to his disability carrier.  However, defendant has provided documentary evidence that it timely responded to the disability carrier's request for information, and that plaintiff was granted both short and long term disability benefits.  (Dkt. No. 41, §§9-13; Exhs. E-I).  Thus, no adverse employment action occurred with respect to the payment of plaintiff's disability benefits.

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion for summary judgment (Dkt. No. 28) be granted in its entirety and that plaintiff's complaint be dismissed.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72.  Any requests for an extension of this deadline must be made to Judge Arcara.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*  See *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. See *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y.  L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  *Failure to comply with these provisions may result in the District Court's refusal to consider the objection.*

**SO ORDERED.**

DATED:      May 13, 2016
            Buffalo, New York

                              /s/ Michael J. Roemer
                              HONORABLE MICHAEL J. ROEMER
                              United States Magistrate Judge